## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | : |
| THE FLINTKOTE COMPANY, et al., | : Bankr. Case No. 04-11300-JKF |
| | : |
| | : |
| IMPERIAL TOBACCO CANADA LIMITED, | : |
| and CERTAIN WHOLLY OWNED | : |
| SUBSIDIARIES, INCLUDING GENSTAR | : |
| CORPORATION, | : |
| | : |
| Appellants, | : |
| | : |
| v. | : Civ. No. 13-227-LPS |
| | : |
| THE FLINTKOTE COMPANY, | : |
| FLINTKOTE MINES LIMITED, THE OFFICIAL | : |
| COMMITTEE OF ASBESTOS PERSONAL | : |
| INJURY CLAIMANTS, and JAMES J. | : |
| McMONAGLE, in his capacity as FUTURE | : |
| CLAIMANTS REPRESENTATIVE, | : |
| | : |
| Appellees.[1] | : |

Stephen M. Miller, Esq. and Eric J. Monzo, Esq., of MORRIS JAMES LLP, Wilmington, Delaware.

L. Joseph Loveland, Esq., Mark M. Maloney, Esq. and Thaddeus D. Wilson, Esq., of KING & SPALDING LLP, Atlanta, Georgia.

Ashley C. Parrish, Esq. and Daniel S. Epps, Esq., of KING &SPALDING LLP, Washington, DC.

*Counsel for Appellants Imperial Tobacco Canada Limited and Certain Wholly Owned Subsidiaries, Including Genstar Corporation*

---

[1]The above-captioned appellees, The Flintkote Company ("Flintkote"), Flintkote Mines Limited ("Mines" and, together with Flintkote, the "Debtors"), the Official Committee of Asbestos Personal Injury Claimants ("ACC"), and James J. McMonagle, in his capacity as the Future Claimants Representative ("FCR"), will be referred to collectively as the "Plan Proponents."

Kevin T. Lantry, Esq., Jeffrey E. Bjork, Esq., Christina M. Craige, Esq. and Anna Gumport, Esq., of SIDLEY AUSTIN LLP, Los Angeles, California.

Jonathan F. Cohn, Esq., Ryan C. Morris, Esq. and Brian P. Morrissey, Esq., of SIDLEY AUSTIN LLP, Washington, DC.

Laura Davis Jones, Esq. and James E. O'Neill, Esq., of PACHULSKI STANG ZIEHL & JONES LLP, Wilmington, Delaware.

*Counsel for Appellees The Flintkote Company and Flintkote Mines Limited*

Elihu Inselbuch, Esq. and Rita C. Tobin, Esq., of CAPLIN & DRYSDALE, CHARTERED, New York, New York.

Peter Van N. Lockwood, Esq. and Ronald E. Reinsel, Esq., of CAPLIN & DRYSDALE, CHARTERED, Washington, DC.

Mark T. Hurford, Esq., of CAMPBELL & LEVINE, LLC, Wilmington, Delaware.

*Counsel for Appellee the Official Committee of Asbestos Personal Injury Claimants*

James L. Patton, Jr., Esq. and Edwin J. Harron, Esq., of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.

Reginald W. Jackson, Esq., of VORYS, SATER, SEYMOUR & PEASE LLP, Columbus, Ohio.

John W. Read, Esq., of VORYS, SATER, SEYMOUR & PEASE LLP, Cleveland, Ohio.

*Counsel for Appellee James J. McMonagle, in his capacity as Future Claimants' Representative*

## MEMORANDUM OPINION

July 10, 2014
Wilmington, Delaware

*Leud P. Dra*

**STARK, U.S. District Judge:**[2]

## I. INTRODUCTION

This bankruptcy appeal involves objections to the Confirmation Order and Opinion

entered in *In re The Flintkote Company* (Bankr. Case No. 04-11300-JKF), as well as a request for

affirmance of a bankruptcy Plan.[3] For the reasons discussed, the Court will overrule all

objections filed by the lone objector, Imperial Tobacco Canada Limited and certain of its wholly

owned subsidiaries, including, without limitation, Genstar Corporation (collectively, "ITCAN"),

adopt the Bankruptcy Court's rulings – including its Findings of Fact and Conclusions of Law –

and affirm confirmation of the Plan, including its § 524(g) "channeling injunction."[4]

---

[2]Judge Joseph J. Farnan, Jr., now retired, was originally assigned as the District Judge handling matters related to the Flintkote bankruptcy case.

[3]Unless otherwise specified: (i) all docket item numbers may be found in Civ. No. 13-227-LPS; and (ii) all citations to statutes in this Memorandum Opinion are to the Bankruptcy Code, Title 11 of the United States Code.

[4]"Chapter 11 bankruptcies have employed a statutory mechanism created by 11 U.S.C. § 524(g) to resolve massive asbestos liability and to evaluate claims and allocate payments to current and future asbestos claimants. When this provision's requirements are satisfied, the bankruptcy court may issue an injunction channeling all current and future claims based on the debtor's asbestos liability to a personal injury trust." *In re Federal-Mogul Global, Inc.*, 684 F.3d 355, 357 (3d Cir. 2012).

1

## II.   **BACKGROUND**[5]

### A.   **Plan Confirmation**

On October 25-26, 2010 and September 12, 13, and 19, 2011, the Bankruptcy Court held

confirmation hearings related to the Amended Joint Plan of Reorganization in Respect of The

Flintkote Company and Flintkote Mines Limited (as modified November 16, 2011).  On

December 21, 2012, the Bankruptcy Court entered the following:

> (1) Findings of Fact, (2) Conclusions of Law, (3) an Order and
> Notice of Certain Bar Dates, and (4) an Order Regarding
> Confirmation of the Amended Joint Plan of Reorganization in
> Respect of The Flintkote Company and Flintkote Mines Limited
> (as Modified November 16, 2011), *In re The Flintkote Company*,
> Bankr. Case No. 04-11300 (Bankr. D. Del. Dec. 21, 2012) [Bankr.
> D.I. 7254] ("Confirmation Order"); and
>
> Memorandum Opinion Overruling Objections to the Amended
> Joint Plan of Reorganization, Confirming Plan and Recommending
> the Affirmation of Confirmation and of the § 524(g) Injunction, *In
> re The Flintkote Company*, Bankr. Case No. 04-11300 (Bankr. D.
> Del. Dec. 21, 2012) [Bankr. D.I. 7253; 486 B.R. 99 (Bankr. D. Del.
> 2012)] ("Confirmation Opinion").

### B.   **The Appeal**

ITCAN's appeal is addressed not only to the Confirmation Order and Confirmation

Opinion, but also to "all orders and rulings adverse to ITCAN that were incorporated into,

merged into, and/or relied upon in rendering the Confirmation Order and Confirmation Opinion."

(D.I. 1 at 2; *see also* D.I. 2 Ex. A)

---

[5]Because the Court writes primarily for the benefit of the parties, who are well acquainted
with this mass tort asbestos bankruptcy case and who have patiently awaited decision after a
lengthy bankruptcy plan confirmation (and appellate) process, the Court presumes reader
familiarity with the pertinent background facts and case history.  Much additional and helpful
background is provided in the Bankruptcy Court's extensive Memorandum Opinion.  *See In re
Flintkote Co.*, 486 B.R. 99 (Bankr. D. Del. 2012) ("Mem. Op.").

### 1.     **Alter Ego Claim**

The Bankruptcy Court denied ITCAN's motion for leave to file an out-of-time proof of claim relating to potential alter ego liability (the "Alter Ego Claim"). ITCAN sought review of that order in an appeal to this Court. (*See* Civ. No. 11-00063-LPS D.I. 1) This Court held that the prior order was not a final order pursuant to 28 U.S.C. § 158(a)(l) and that ITCAN failed to meet the standards for interlocutory review set out in § 158(a)(3). On May 21, 2012, this Court dismissed the appeal for lack of jurisdiction. (*Id.* D.I. 24) After ITCAN appealed this ruling to the Third Circuit (*see id.* D.I. 26), the parties on January 30, 2013 jointly requested that the appeal be dismissed without prejudice (*see id.* D.I. 29). By that point, this Court had obtained jurisdiction to review the Alter Ego Claim in the context of its review of the Confirmation Order.

### 2.     **Section 107 Claim**

In its second ruling – embodied in (a) the Memorandum Opinion and (b) the related Order Sustaining Debtors' Objection to Claim No. 2262 Filed By Imperial Tobacco Canada Limited and Overruling ITCAN's Objection to Plan Confirmation (Bankr. Case No. 04-11300 (Bankr. D. Del. Oct. 3, 2011) [collectively Bankr. D.I. No. 6227]) – the Bankruptcy Court disallowed ITCAN's proof of claim for expenses incurred investigating the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* claim.[6] ITCAN appealed the Bankruptcy Court's decision to this Court. (*See* Civ. No. 11-01299-LPS D.I. 1) This Court dismissed ITCAN's appeal without prejudice to permit the issue raised in it to be considered in conjunction with the instant appeal.

---

[6]CERCLA § 107(a) allows private parties to seek compensation for the costs of remediation from parties that are statutorily responsible for contamination.

3.     **Appeal of Plan Confirmation**

ITCAN, the lone remaining objector to the Plan, now seeks this Court's review of the

Confirmation Opinion and Confirmation Order pursuant to 28 U.S.C. § 158 and Bankruptcy

Rules 8001, *et seq.* (*See* D.I. 10 at 2, 13; D.I. 12) In turn, the Plan Proponents request affirmance

pursuant to § 524(g)(3)(A). (*See* D.I. 10 at 2; D.I. 12)  ITCAN, of course, opposes affirmance.

(*See* D.I. 10 at 2)

All aspects of ITCAN's appeal are fully briefed.[7]  The Court heard oral argument on July

31, 2013. (*See* D.I. 36 ("Tr."))

III.   **LEGAL STANDARDS**

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158.

Pursuant to § 158(a), district courts have mandatory jurisdiction to hear appeals "from final

judgments, orders, and decrees" and discretionary jurisdiction over appeals "from other

interlocutory orders and decrees." 28 U.S.C. § 158(a)(1) and (3).  "An order confirming a

Chapter 11 plan is considered a final, appealable order." *In re Kaiser Aluminum Corp.*, 343 B.R.

88, 93 (D. Del. 2006) (citing *Eastern Minerals & Chems., Co. v. Mahan*, 225 F.3d 330, 336 n.11

(3d Cir. 2000)).

In conducting its review of the issues on appeal, this Court reviews the Bankruptcy

Court's findings of fact for clear error and exercises plenary review over questions of law. *See*

*Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). "A

finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court

---

[7]The extensive briefing in this matter included not only the pre-hearing submissions (D.I.
16-18, 28-32, 35) but also additional post-hearing letters and briefs (D.I. 37-38, 40-46).

4

on the entire evidence is left with the definite and firm conviction that a mistake has been

committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). The Court must

"break down mixed questions of law and fact, applying the appropriate standard to each

component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992).

## IV. DISCUSSION

The parties agree that review by this Court is warranted, as the Confirmation Order is a

final order that resolves all disputed issues between the Plan Proponents and ITCAN. (*See* Civ.

No. 11-01299-LPS D.I. 15) It is likewise evident that the Court now has jurisdiction over

ITCAN's appeals relating to the Alter Ego Claim and the § 107 Claim. (*See id.*) The parties

disagree over whether ITCAN has standing and over the proper resolution of the issues presented

on appeal.

### A. Standing

The Bankruptcy Court found that ITCAN lacks standing, for reasons summarized by the

Plan Proponents:

> [T]he Bankruptcy Court held that ITCAN lacks standing to object
> to the Plan. A22-43 (Mem. Op. 11-32). The court determined that
> ITCAN has no creditor standing, because all of its asserted claims
> were untimely or disallowed. A26-32 (*id*. at 15–21). The
> Bankruptcy Court also concluded that ITCAN does not otherwise
> have standing because confirmation would not impair ITCAN's
> rights or defenses. A33-43 (*id*. at 22-32). As the court explained,
> "ITCAN has not shown an injury caused by the Plan for which this
> Court can provide a remedy." A43 (*id*. at 32).

(D.I. 28 at 21)

ITCAN argues that the Bankruptcy Court erred because (i) ITCAN is a creditor, and thus,

by definition, a "party in interest" with standing to object to confirmation; and (ii) even if it is

5

not a creditor of the estate, it is still a "party in interest" because the Plan impairs various rights and defenses it has with respect to Flintkote and with respect to individual asbestos plaintiffs in the ongoing "dividend recovery litigation." (D.I. 16 at 17) ITCAN elaborates that "because [it] is entitled to prevail in its appeal of both the bankruptcy court's denial of leave to file its alter ego contribution claim and the bankruptcy court's disallowance of its CERLCA § 107 claim, ITCAN is a creditor of Flintkote's estate and, as a creditor, plainly has standing." (*Id.* at 18)

The Plan Proponents respond that ITCAN's asserted injuries are wholly speculative and incapable of redress. (D.I. 28 at 3-4) Further, according to the Plan Proponents, even if ITCAN met the minimum constitutional requirements for standing, ITCAN fails to satisfy the additional prudential and appellate standing requirements "because it is not directly affected by the confirmation order and seeks merely to assert the rights of third parties." (*Id.* at 25) The Plan Proponents cite *In re W.R. Grace & Co.*, 532 Fed. Appx. 264, 268 (3d Cir. 2013), for the proposition that a putative creditor has no standing to object to a § 524(g) reorganization plan based on speculative requests for claims of contribution and indemnity. (*See* D.I. 35)

ITCAN has the burden to show that it has constitutional, prudential, and appellate standing. To have constitutional standing, ITCAN must demonstrate (1) a concrete and particularized injury, (2) a causal connection between the injury and the conduct complained of, and (3) redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).[8] To have prudential standing, ITCAN "must assert [its] own legal rights and interests, and cannot rest

---

[8] A party must also have "standing under the Bankruptcy Code," but the test for being a "party in interest" under the Bankruptcy Code is "coextensive" with the requirements for "Article III standing." *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 211 (3d Cir. 2011); *see also* 11 U.S.C. § 1109(b) (defining "party in interest").

[its] claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see also Pitt News v. Fisher*, 215 F.3d 354, 359 (3d Cir. 2000). To have appellate standing, ITCAN must be a "person aggrieved," that is a party "whose rights or interests are directly and adversely affected pecuniarily by an order of the bankruptcy court." *In re PWS Holding Corp.*, 228 F.3d 224, 248-49 (3d Cir. 2000) (internal quotation marks and citation omitted).

The Court agrees with the Bankruptcy Court that ITCAN lacks even constitutional standing (so it need not address whether ITCAN also lacks prudential and/or appellate standing). The future Alter Ego Claim, based on a theory of indemnity or contribution, is speculative, not "actual and imminent."[9] Nor does the § 107 Claim establish standing because, as the Bankruptcy Court concluded, ITCAN's (i) CERCLA claim for contribution and indemnity related to cleanup costs [§113] under § 502(e)(1)(B) is contingent and thus properly disallowed; and (ii) claim for attorneys' fees must be disallowed because such fees are not recoverable under § 107. (*See* Mem Op. at 21)

Nevertheless, given that Plan confirmation is at stake, the importance of the issues presented, the extensive resources the parties have devoted to these issues, and the fact that the Court of Appeals may disagree with this Court and the Bankruptcy Court, the Court will address the issues presented in this appeal. This is consistent with the approach the Bankruptcy Court took. (*See* D.I. 28 at 19) Moreover, given that the Plan includes a channeling injunction under 11 U.S.C. § 524(g), this Court has an obligation to review the lawfulness of the Plan. *See In re*

---

[9]The Court further agrees with the Bankruptcy Court's determination that to the extent Flintkote has an alter ego claim against ITCAN, Flintkote is permitted to formally abandon any interest in such a claim through the Plan. (*See* A37-43)

7

*Combustion Eng'g.*, 391 F.3d 190, 234 n.45 (3d Cir. 2004).

## B.    **Claims and Demands**

ITCAN contends that the Bankruptcy Court erred in confirming the Plan pursuant to §§

524(g) and 1129 of the Bankruptcy Code based on an erroneous determination that the

reorganized Flintkote would be subject to "substantial future demands," a requirement of §

524(g)(2)(B)(ii)(I).  (D.I. 2 Ex. A; Tr. at 6)  ITCAN asserts the Bankruptcy Court erred in its

legal interpretation of the phrase "substantial future demands" and further erred by finding, as a

factual matter, that Flintkote faces such "substantial future demands."  (*See, e.g.*, D.I. 16 at 23-

43; D.I. 31 at 3-11)  As the Plan Proponents summarize:

> [ITCAN's objections] focused on § 524(g)'s requirement that the
> debtor show it will likely be subject to "substantial future
> demands" from asbestos victims.  11 U.S.C. § 524(g)(2)(B)(ii)(I).
> From the inception of § 524(g), courts have permitted plans to
> satisfy this requirement by showing that there will be a substantial
> number of future demands from asbestos victims who were
> previously exposed but are not yet symptomatic.  This approach
> was consistent with Congress's central concern in enacting
> § 524(g): namely, to protect and equitably compensate asbestos
> victims who were previously exposed but are not yet symptomatic.
> [Still], ITCAN argued that such exposed-but-not-yet-symptomatic
> individuals cannot make future demands.  According to ITCAN,
> the only future demand holders are those asbestos victims who are
> exposed for the first time after confirmation, even though asbestos
> production in this country ended decades ago.  ITCAN contends
> that its novel interpretation of § 524(g) is compelled by the Third
> Circuit's decision in *Jeld-Wen, Inc. v. Van Brunt (In re
> Grossman's Inc.)*, 607 F.3d 114, 125 (3d Cir. 2010) (en banc),
> even though Grossman's did not address the definition of
> "substantial future demands."

(D.I. 28 at 19-20)

The Court agrees with the Bankruptcy Court that exposed-but-asymptomatic individuals

have potential "future demands." (Mem. Op. at 33-34, 36-41, & n.66; *see also* D.I. 16 at 34)

Congress did not make the terms "claim" and "demand" mutually exclusive, as ITCAN suggests.

(*See* Mem. Op. at 40-41) ITCAN points to § 524(g)(5), which states in relevant part that "the

term 'demand' means a demand for payment, present or future, that . . . was not a claim *during*

*the proceedings* leading to the confirmation of a plan of reorganization." 11 U.S.C.

§ 524(g)(5)(A) (emphasis added). ITCAN argues that this provision shows that "demands"

cannot be "claims." However, as pointed out by the Plan Proponents:

> [B]y its terms, § 524(g)(5) excludes from the definition of
> "demand" only "claim[s] during the proceedings." The natural
> reading of this phrase refers to claims that were actually raised or
> identified "during the proceedings," as opposed to claims that
> merely could have been raised if only the asbestos victims had
> known about them.

(D.I. 28 at 27) Furthermore, ITCAN's interpretation "does not provide protection for those

people who are exposed [to asbestos] but asymptomatic" (Tr. at 69), undermining a key aim of

§ 524(g). *See Grossman's*, 607 F.3d at 126 n.12; *Combustion Eng'g*, 391 F.3d at 234 n.45.

"Under ITCAN's construction, asbestos victims who have been exposed but are currently

asymptomatic would be excluded from a key statutory protection. Section 524(g)(4)(B)(ii)

provides for the appointment of 'a legal representative for the purpose of protecting the rights of

persons that might subsequently assert demands.' Under ITCAN's theory, the only asbestos

victims who would be covered by this provision are those who are not yet exposed. Anyone who

has been exposed would be left out in the cold." (D.I. 28 at 28)

Finally, subsequent to oral argument, the Third Circuit issued two opinions that, at

minimum, strongly support the Plan Proponents' position. *See In re W.R. Grace & Co.*, 729 F.3d

9

311 (3d Cir. 2013) ("*Canada/Montana*"); *In re W.R. Grace & Co.*, 729 F.3d 332 (3d Cir. 2013) ("*AMH*"). In these cases, the Third Circuit rejected the argument (made here by ITCAN) that the terms "claims and demands are mutually exclusive." *AMH*, 729 F.3d at 321; *see also* D.I. 37 at 1. Even ITCAN concedes that in these cases "the Third Circuit suggests that claims and demands are not mutually exclusive." (D.I. 38 at 2)

In sum, the Court agrees with the Bankruptcy Court's interpretation of "substantial future demands." Moreover, the Bankruptcy Court's finding that Flintkote is likely to face "substantial future demands" from exposed-but-asymptomatic individuals is not clearly erroneous. (*See id.*)

## C. Notice

ITCAN also contends the Bankruptcy Court erred in determining that, following the Third Circuit's *en banc* opinion in *Grossman's*, 607 F.3d 114, and the Third Circuit's subsequent decision in *Wright v. Owens Corning*, 679 F.3d 101 (3d Cir. 2012), the Plan Proponents provided adequate notice to, and solicited votes from, all creditors and parties in interest, as required by, *inter alia*, §§ 342(a), 1125, 1126, and 1129(a)(2) of the Bankruptcy Code, as well as the Due Process Clause of the U.S. Constitution. (D.I. 2 Ex. A) According to ITCAN, the Plan is not confirmable because, under *Grossman's*, the Debtors did not provide adequate or additional notice to individuals who hold "claims" and were entitled to participate in the bankruptcy proceedings. Nor did the Debtors solicit votes from all claimants, as required by the Due Process Clause. (*See* D.I. 16 at 35; Tr. at 6)

The Court agrees with the Plan Proponents that notice was handled appropriately. The Bankruptcy Court approved Flintkote's notice and solicitation procedures pre-*Grossman's*, and ITCAN apparently concedes that nothing about Flintkote's notice or solicitation procedures was

10

inadequate before *Grossman's* was decided. (*See, e.g.*, Tr. at 80)[10] The rights of exposed-but-asymptomatic victims are adequately protected. As the Bankruptcy Court explained, "if and when such a creditor becomes ill, there will be a trust in place to address claims for compensation. There is nothing to be gained by requiring Flintkote to provide additional notice from what this Court has already approved." (Mem. Op. at 42)

Fundamentally, as the Plan Proponents argue, and as the Third Circuit recognized in *Grossman's* and *Wright*, "§ 524(g) was Congress's answer to the Due Process concerns raised by other bankruptcy plans in asbestos cases." (D.I. 28 at 24) Additionally, here, the Plan provides for a future claimants' representative who fully protects the interests of unknown asbestos claimants and eliminates any bar date for asbestos personal injury victims – protections that were not present in the approved plan in *Wright*.

## D. **Business**

ITCAN next argues that Flintkote does not have a viable, going concern business around which to reorganize, as is required by 11 U.S.C. §§ 524(g), 1129(a)(11), and 1141(d)(3), and therefore does not qualify for the protections afforded by a § 524(g) channeling injunction. (D.I. 16, 31) Going forward, Flintkote plans to "pursue what it alleges are five separate business lines upon emerging from bankruptcy: (1) purchasing and leasing real estate; (2) consulting and

_____

[10]ITCAN's contention that *Grossman's* required an amended notice to be provided depends on ITCAN's distinction between claims and demands, which the Court has already rejected. *See Canada/Montana*, 729 F.3d at 311 ("§ 524(g) includes a number of requirements that are specifically tailored to protect the due process rights of future claimants, such as the fair and equitable provision and the mandatory seventy-five percent approval requirement. Therefore, as long as a court correctly determines that § 524(g)'s requirements are satisfied, present and future claims can be channeled to a § 524(g) trust without violating due process.") (internal quotation marks and citations omitted).

11

executive management services; (3) claims processing; (4) trust services; and (5) pursuit of the

Dividend Recovery Litigation [against ITCAN]." (Mem. Op. at 8) (internal footnote omitted)  In

ITCAN's view, the Plan Proponents have "failed to prove that Flintkote would be a profitable

business capable of funding the trust after confirmation." (Tr. at 6)

Section 524(g) imposes two funding requirements on the debtor.  First, the resulting

§ 524(g) trust must "own, or . . . be entitled to own . . . a majority of the voting shares" of the

debtor.  11 U.S.C. § 524(g)(2)(B)(i)(III).  Second, the debtor must fund the trust with its

"securities" and accept an "obligation" to "make future payments, including dividends" to the

trust.  *Id.* § 524(g)(2)(B)(i)(II).

ITCAN claims that § 524(g) requires Flintkote to continue operating a business that

existed before it filed its bankruptcy petition; it further contends that Flintkote's ongoing

business operations are also inadequate.  (D.I. 28 at 20)  The Plan Proponents respond that even

assuming that Flintkote must be a "going concern," as the Third Circuit suggested in *dicta* in

*Combustion Engineering*, Flintkote meets that standard.  (*See generally* D.I. 28 at 43; Tr. at 95-

96)  The Court agrees with the Plan Proponents.

As the Bankruptcy Court correctly held, "[n]othing in § 524(g), § 1129, § 1141, or

*Combustion Engineering* requires a debtor to continue to engage in a pre-petition (and possibly

unsuccessful) business to the exclusion of any other." (Mem. Op. at 46)  The reason for

requiring a debtor to engage in a business is to provide an evergreen source of funds for the trust.

(*See id.* at 44-45, 50)  Neither the law (including *Combustion Eng'g*, 391 F.3d at 248, stating that

the "'implication of [§ 524(g)(2)(B)(i)(II)] is that the reorganized debtor must be a going

concern, such that it is able to make future payments into the trust to provide an 'evergreen'

12

funding source for future asbestos claimants") nor logic dictates that the evergreen source of funds must be a business the debtor engaged in prior to filing for bankruptcy.[11]

In any event, the Bankruptcy Court did not clearly err in finding that Flintkote's business activities are sufficient to satisfy any "ongoing business" requirement that may be imposed by § 524(g). After conducting the confirmation hearing, the Bankruptcy Court reopened the evidentiary record to allow the Plan Proponents to introduce evidence relating to the profitability or loss of Flintkote's real property management business. (Mem. Op. at 53, 62-63, 66) The Bankruptcy Court scrutinized the projected profitability of Flintkote's real estate business and found it sufficient. (*See* Mem. Op. at 55, 66) This finding is not clearly erroneous.

Section 524(g) does not impose on debtors a requirement to demonstrate a particular rate of return on capital investment, or comply with generally accepted accounting principles, or adopt an independent audit plan. (Tr. at 92) ITCAN's criticism of Flintkote for not meeting these non-requirements is unavailing. The Bankruptcy Court found that Flintkote had satisfied § 524(g)'s funding requirement and the standard confirmation and discharge requirements under the Bankruptcy Code. (*See, e.g.*, Mem. Op. at 3, 73-74) These findings are not clearly erroneous and are adequate to support the § 524(g) channeling injunction.

Although the Bankruptcy Court did not expressly conclude that Flintkote's projections show it will earn a profit, the evidence it reviewed – including documentary exhibits, affidavits, various settlements, and projected net recovery – support such a finding. (*See* Mem. Op. at 8, 70-

---

[11]Although not a requirement, Judge Fitzgerald noted that "Flintkote's 'new' business mirrors a prior undertaking," i.e., "Flintkote formerly leased real property to third parties for several years in the 1980s, although that aspect of its business was not operative by the time it filed bankruptcy." (Mem. Op. at 51)

13

71; Tr. at 94-96)  The trust will receive a 100% interest in the reorganized Flintkote.  As the Bankruptcy Court found, "Flintkote's total real estate holdings will provide a stable source of income."  (Mem. Op. at 75; *see also* Tr. at 33, 88, 90-96, 108-09)

ITCAN argues that the Court's ruling will mean that businesses as paltry as a "lemonade stand" will have to be considered adequate to support a § 524(g) channeling injunction.  (Tr. at 95-96)  The Court need not decide if this is the case.  It is sufficient for today's decision to observe that § 524(g) plans have been confirmed with less ongoing business than that in which Flintkote intends to engage.  *See, e.g., Combustion Eng'g*, 391 F.3d at 248 (approving § 524(g) injunction for debtor with business comprising a single piece of real estate); *In re ACandS, Inc.*, No. 02-12687 (Bankr. D. Del. May 8, 2008) (D.I. 3310) (granting § 524(g) injunction where post-confirmation business consisted solely of ownership and lease of single piece of real estate to be contributed to debtor on effective date of Plan).  It is also doubtful whether a plan predicated merely on a "lemonade stand" would garner the voting support of 94-99% of asbestos claimants, as Flintkote's Plan here has done.

### E.    ITCAN's Appeal

Having considered the principal issues raised by ITCAN in its appeal, the Court concludes that the Bankruptcy Court did not clearly err with respect to its findings of fact and did not err in its legal determinations.  It is evident that the Bankruptcy Court thoroughly and carefully reviewed the record, evaluating it in relation to the positions of the parties and the appropriate authority in light of the circumstances presented.  In support of its decisions, the Bankruptcy Court provided lengthy analysis in its Memorandum Opinion and accompanying Findings of Fact and Conclusions of Law.  The Court will affirm the Bankruptcy Court.

14

## F.     Request for Confirmation

The Plan Proponents ask the Court to affirm the Confirmation Order. That Order

concluded that the Plan fully satisfies Chapter 11's requirements, including those necessary to

support a trust and injunction under § 524(g). ITCAN is the lone remaining Plan objector,

objecting to affirmance on grounds already rejected above, and further contending that the

Bankruptcy Court erred in determining that the Amended Joint Plan complies with §§

1129(a)(1), 1129(a)(7), 1129(a)(11), and 1141(d). In particular, ITCAN asserts the Bankruptcy

Court erred in:

> determining that the Amended Joint Plan is neutral as to
> ITCAN and its affiliates, including Genstar Corporation, in respect
> to their legal, equitable, and contractual rights in and to certain
> insurance policies and related proceeds that are shared among one
> or both of the Debtors, on the one hand, and ITCAN and/or one or
> more of its affiliates, on the other hand; and
>
> . . . approving and authorizing the Mines Liquidating
> Injunction contained in Section 12.1.4 of the Amended Joint Plan
> given that (a) the Amended Joint Plan provides for the liquidation
> of all or substantially all of Mines' assets and property, (b) Mines
> will not engage in business after consummation of the Amended
> Joint Plan, and (c) Section 1141(d)(3) prevents Mines from
> receiving a discharge of its debts.

(D.I. 2 Ex. A at 2)

In its lengthy and thorough opinion, the Bankruptcy Court explained how the Plan

complies with Bankruptcy Code §§ 1129, 1141, and 524(g). Having considered the Bankruptcy

Court's analysis, the relevant objections, briefing, and oral argument, the Court finds that

ITCAN's objections lack merit and must be denied. The Court adopts the Findings of Fact and

Conclusions of Law regarding Confirmation, and, having done so, the Plan will be confirmed in

15

its entirety.  This affirmance of the Confirmation Order includes the § 524(g) injunction.

## V.    CONCLUSION

Accordingly, and for the foregoing reasons, the Bankruptcy Court's decisions will be affirmed and its findings and conclusions adopted.  ITCAN's objections to the Confirmation Order and accompanying Opinion will be overruled.

An appropriate Order, substantially in the form proposed by the Plan Proponents, follows.